```
CASE 19-C-59           MERCER                                      PAGE 0001

PRINCETON COMMUNITY HOSPITAL    VS. NUANCE COMMUNICATIONS INC


LINE    DATE    ACTION

   1 03/05/19  COMPLAINT FILED. SUMMONS ISSUED(ATTY PREP) SER   BY CW COMP/SUMM
   2           BY SOS BY ATTY. COPY TO ATTY & JUDGE;
   3 03/18/19  STIPULATION PURSUANT TO W.VA.R.CIV.P.6(B);       BY PT STIPULATIO
   4 03/22/19  EXHIBIT 1 FILED;                                 BY PT EXH
   5 03/27/19  MOTION FOR PRO HAC VICE ADMISSION OF JENNIFER
   6           B. SEALE FILED W/COS AND ATTACHED APPLICATION
   7           AND STMT OF ENDORSEMENT;                         BY WLL MOTION
   8 03/27/19  MOTION FOR PRO HAC VICE ADMISSION OF DAVID C.
   9           LASHWAY FILED W/COS AND ATTACHED APPLICATION
  10           AND STMT OF ENDORSEMENT;                         BY WLL MOTION
  11 03/27/19  MOTION FOR PRO HAC VICE ADMISSION OF JOHN W.
  12           WOODS FILED W/COS AND ATTACHED APPLICATION
  13           AND STMT OF ENDORSEMENT;                         BY WLL MOTION
  14 03/28/19  ORDER GRANTING MOTION FOR ADMISSION PRO HAC      BY CB  OR/PROHAC
  15           VICE OF JOHN W WOODS
  16 03/28/19  ORDER GRANTING MOTION FOR ADMISSION PRO HAC      BY CB  OR/PROHAC
  17           VICE OF JENNIFER B SEALE
  18 03/28/19  ORDER GRANTING MOTION FOR ADMISSION PRO HAC      BY CB  OR/PROHAC
  19           VICE OF DAVID C. LASHWAY
```



400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000   (304) 933-8183 Fax
www.steptoe-johnson.com

Writer's Contact Information

Phone: (304) 933-8151
Fax: (304) 933-8753
E-mail Address:
larry.rector@steptoe-johnson.com

March 4, 2019

**FILED**
MAR 05 2019
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

**BY FEDERAL EXPRESS**

Julie Ball, Clerk
Mercer County Courthouse
1501 Main Street
Princeton, WV 24740

19-C-59-mw

Re:  *Princeton Community Hospital Association, Inc. v. Nuance Communications, Inc.*, (Mercer Cnty., W. Va.)

Dear Ms. Ball:

    Enclosed for filing please find the original "Civil Case Information Statement," "Summons," and "Complaint" in the above-referenced matter. Also enclosed is a check in the amount of $200.00 for the filing fee.

    Please file-stamp the extra copies of the Complaint and Civil Case Information Statements and issue the Summons and return them to me in the enclosed, postage paid, self-addressed envelope so that we may obtain personal service upon the Defendant.

    Thank you for your assistance in this matter. If you should have any questions, please do not hesitate to contact me.

Very truly yours,

Larry J. Rector

LJR/mal
Enclosures
727500.00032

8345904.1

West Virginia • Ohio • Kentucky • Pennsylvania • Texas • Colorado

TERRALEX®

IN THE CIRCUIT COURT OF _____MERCER_____ COUNTY, WEST VIRGINIA

## CIVIL CASE INFORMATION STATEMENT
(Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

Plaintiff(s)  
PRINCETON COMMUNITY HOSPITAL ASSOCIATION, INC.,

Case No. 19-C-59  
Judge: Wills

vs.

Defendant(s)  
NUANCE COMMUNICATIONS, INC.  
Name  
1 Wayside Road  
Street Address  
Burlington, MA 01803  
City, State, Zip Code

Days to Answer: 30  
Type of Service: Secretary of State

FILED  
MAR 05 2019  
JULIE BALL  
CLERK CIRCUIT COURT  
MERCER COUNTY

**II. TYPE OF CASE:**

- [✓] General Civil
- [ ] Mass Litigation [As defined in T.C.R. 26.04(a)]
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [✓] Yes [ ] No   CASE WILL BE READY FOR TRIAL BY (Month/Year): 03 / 2020

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**  
[ ] Yes [✓] No

IF YES, PLEASE SPECIFY:
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

Attorney Name: Larry J. Rector (WV Bar No. 6418)  
Firm: Steptoe & Johnson PLLC  
Address: 400 White Oaks Blvd., Bridgeport, WV 26330  
Telephone: (304) 933-8151  
[ ] Proceeding Without an Attorney

Representing:
- [✓] Plaintiff
- [ ] Defendant
- [ ] Cross-Defendant
- [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff
- [ ] 3rd-Party Defendant

Original and __2__ copies of complaint enclosed/attached.

Dated: 03 / 04 / 2019    Signature: _(signed)_

SCA-C-100: Civil Case Information Statement (Other than Domestic Relations)    Revision Date: 12/2015

FILED
MAR 05 2019
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION, INC.,

        Plaintiff,

v.

        Civil Action No. 19-C-59-mw

NUANCE COMMUNICATIONS, INC.,

Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Princeton Community Hospital Association, Inc. ("PCH" or the "Hospital"), by and through its counsel, in support of its Complaint against Defendant Nuance Communications, Inc. ("Nuance"), alleges as follows:

### Nature of the Action

1. PCH brings this action for breach of contract and negligence against Nuance to recover losses resulting from a security incident and data breach that occurred on June 27, 2017.

2. Nuance software was integrated into PCH's hospital computer network, through which all hospital services were conducted and administered. Nuance had a contractual and legal duty to safeguard and protect PCH's computer network from malware and other breaches through Nuance's connections.

3. On June 27, 2017, Nuance system was infected by malicious malware that embedded and destroyed all data. Shortly thereafter, the same malicious malware encrypted PCH's entire computer health network and destroyed all data content.

1

4. Nuance was the source of and spread the malware that destroyed PCH's systems. Nuance is responsible for PCH's total damages of approximately $6.8 million, net of payments from PCH's insurers.

## Parties

5. Plaintiff PCH is a West Virginia non-profit organization, with its place of business at 122 12th Street, Princeton, West Virginia.

6. PCH opened its hospital doors in 1970 and has grown to be a southern West Virginia leader in medical care, with 267 beds, 160 doctors and 1,097 employees. PCH offers a full range of hospital care, including cancer care, psychiatric care, outpatient, rehabilitation, and emergency medicine services.

7. Upon information and belief, Defendant Nuance is a Delaware for-profit corporation, with its principal place of business at 1 Wayside Road in Burlington, Massachusetts.

8. Nuance is an information technology company, with a specialized line of software applications and IT support specifically for hospitals and their patients.

## Jurisdiction

9. Jurisdiction and venue are proper in the Circuit Court of Mercer County pursuant to West Virginia Code §§ 29A-4-2, 53-1-2, and 53-5-3.

10. This Court has personal jurisdiction over Nuance because Nuance transacted business or contracted with PCH in Mercer County, West Virginia.

11. Venue is proper in this Court because the Plaintiff's usual place of business is in Princeton, West Virginia. In addition, on December 19, 2016, Nuance and PCH entered into a Healthcare Master Agreement (the "Agreement") which, in part, forms the basis for this action. Paragraph 14.5 of the Agreement captioned "Governing Law" provides as follows:

14.5 Governing Law. This Agreement shall be governed by the laws of the State of West Virginia, USA, without regard to choice of law rules, and Company hereby submits to the jurisdiction of the federal and state courts located in said State and the applicable service of process. The official text of the Agreement and any Addendum or any notices given on accounts or statements required hereby shall be in English. In Canada, Province of Quebec for all contracts drafted in English, both Parties agree to write this document in English. Les Partlea ont convenu de rediger le present document en langue englaise.

Accordingly, Nuance has submitted to the jurisdiction of this Court and agreed to be served process in this matter.

### No Federal Jurisdiction

12. This state Court has subject matter jurisdiction over the claims set forth in this Complaint as the claims do not arise under federal law. PCH seeks no relief under any federal laws or regulations, asserts no federal claims, and withdraws any asserted state law claims that are preempted by federal law. No claims asserted herein should be understood to require interpretation of any federal law such that it would implicate federal jurisdiction. No artful pleading is intended herein as PCH is seeking relief solely under rights provided to it under West Virginia state law.

### Factual Background

13. For many years, dating back to at least 2011, PCH utilized software and application service provider ("ASP") services provided by Nuance, as governed under various agreements signed between PCH and Nuance.

14. As a hospital, PCH must comply with state and federal laws that protect private and confidential patient health information, including the law known as "HIPAA" – the Health Insurance Portability and Accountability Act of 1996, as amended by Subtitle D of the Health Information Technology for Economic and Clinical Health Act, Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009 (Pub. L. No.

111-5) and the related federal regulation published at 45 C.F.R. parts 160 and 164 (collectively "HIPAA").

15. The HIPAA "Privacy Rule" allows an ASP like Nuance to access a Hospital's protected health information ("PHI") so long as the ASP executes and agrees to be bound by the requirements of a standard written "Business Associate Agreement" that complies with the terms of 45 CFR § 164.504(e). These "standards of care" for an ASP Business Associate like Nuance include, among other duties, the duty to provide adequate safeguards to protect a Hospital's PHI. While HIPAA establishes the applicable "standards of care" for purposes of determining whether a breach of Nuance's statutory and common law obligations has occurred, this Complaint is not stating an independent federal law claims premised upon HIPAA. Rather, as recognized by the West Virginia Supreme Court of Appeals, HIPAA can be relied upon as setting a standard of care for an otherwise entirely state law claim.

16. On December 19, 2016, Nuance and PCH entered into a Healthcare Master Agreement (the "Agreement") for PCH's use of Nuance software for use in a hospital setting.

17. Under the Agreement, PCH has used various Nuance software, including IntelliScript, EditScript, eScription Clinician Console, Clintegrity,® Clinical Documentation Improvement ("CDI"), Compliant Documentation Management Program ("CDMP") Guide, and Dragon Medical One.

18. The Agreement, attached as Exhibit 1 hereto and incorporated by reference herein, incorporates the governing HIPAA Business Associate Addendum. Section 8 of the Agreement provides that "[t]he Parties agree to the Business Associate Terms and Conditions attached hereto as Exhibit A and made a part of this Agreement, wherein Nuance may be referred to as 'Business Associate' and [PCH] may be referred to as 'Covered Entity.'"

19. In the Ex. A Business Associate Terms and Conditions, Nuance promised, among other things, to "use appropriate safeguards, and to comply with Subpart C of 45 CFR Part 164 with respect to protected health information, to prevent use or disclosure of protected health information...." Ex. A, ¶ 4.a.

20. Nuance's agreed obligations include, among other things, a promise to "(1) ensure the confidentiality, integrity, and availability of all electronic protected health information [that PCH or Nuance] creates, receives, maintains, or transmits" and (2) protect against any reasonably anticipated threats or hazards to the security or integrity of such information." 45 CFR Subpart C §164.306(a).

21. Nuance further promised in Section 7 of the Exhibit A Addendum to:

> ***reimburse, indemnify and hold harmless [PCH] for all costs, expenses (including reasonable attorneys' fees), damages and other losses*** resulting directly from any negligent breach of this Business Associate's Addendum, Security Incident or Breach of PHI maintained by [Nuance] or [Nuance's] agent or subcontractor, subject to the provisions of this Agreement. [Emphasis Added].

22. As of June 2017, Nuance's software package was fully integrated into PCH's entire computer network, through which all Hospital services were conducted and administered.

### The NotPetya Malware Incident

23. All businesses are concerned about infection to their computer systems from viruses and "malware," especially those (like PCH) that maintain confidential, sensitive, and legally protected patient healthcare information.

24. PCH has long been vigilant in guarding against such attacks, and relies on its IT vendors, like Nuance, to be equally guarded against malware.

25. In March 2017, PCH (like many businesses across the U.S.) installed Microsoft's patch for what was called the "EternalBlue" vulnerability, to guard against the then-feared "WannaCry" virus that had infected some business systems in the U.S.

26. At that point, PCH had done everything it could reasonably do to protect itself against the most infectious computer viruses known to exist at the time. Nuance, however, had not done so.

27. On June 24, 2017, a self-propagating malware known as "NotPetya" began spreading globally from a source in Ukraine. The malware was named "NotPetya" to distinguish it from a similar malware called "Petya."

28. NotPetya spread by using the same EternalBlue vulnerability as WannaCry, but was able to mutate into a more pernicious virus by combining with password credentials obtained from compromised systems to infiltrate systems regardless of whether that other system had installed the EternalBlue patch.

29. If NotPetya infiltrated a system and found within that system a password link to another system, the virus then spread into that other system by using the password credential. In this manner, the virus spread globally through those *weak systems* willing to function as a gateway to other systems.

30. On June 27, 2017, Nuance computer systems were infected with the NotPetya virus, due to an absence of adequate safeguards.

31. The malware then spread from Nuance to PCH, and upon information and belief, to numerous other healthcare organizations and hospitals serviced by Nuance. PCH discovered the malware attack in the early morning hours of June 27, 2017, when various Hospital computers displayed false extortion messages pretending to demand ransom payment in Bitcoin.

There was no actual way to pay the ransom because PCH's system was in an instant and rapid state of viral disintegration.

32. Upon entry into PCH's system, the malware encrypted PCH's entire computer health network, and then destroyed all data content.

33. PCH's computer systems were all shut down and destroyed.

### Nuance Was the Source of the Malware Attack

34. Nuance was the source of the NotPetya virus that destroyed the PCH system.

35. More specifically, on June 27, 2017, at approximately UTC 11:00 (7:00 a.m. EDT), Nuance was compromised by NotPetya malware.

36. On June 27, 2017, at approximately UTC 11:30 (7:30 a.m. EDT), PCH was compromised by NotPetya malware.

37. *This was not a coincidence.* The malware entered PCH's network by using Nuance's Administrator-level credentials over an internal Windows port.

38. Nuance had set up a "virtual private network" ("VPN") connection directly into PCH's system, with no firewall between them. Nuance imported its files directly into the PCH network, using a Domain Administrator username and password. Nuance also had an "SMB" (Window's Server Message Block) connection to PCH's Meditech system.

39. Nuance had, in short, set up a continuously open tunnel into PCH's system, just the same as any internal PCH Domain Administrator – and the NotPetya malware used that tunnel to jump directly from Nuance to PCH.

40. No other PCH vendor (with VPN access or otherwise) reported a NotPetya infection – *only Nuance.*

7

41. At the same time, on information and belief, Nuance was a NotPetya source for other Nuance customers.

## Immediate Impact on PCH

42. Operationally as a hospital, PCH went to condition "red diversion" status. That is, during the time that the PCH computer system was down, hospital personnel had to conduct services manually (without computers or devices reliant on computers, like CAT Scans). PCH had to divert ambulances and turn away patients.

43. For several weeks, PCH continued to operate as best it could under a mostly manual process. PCH had a significant backlog in medical imaging and was operating the hospital in a paper environment. Even when systems were restored, the backlog and transitioning the work of several weeks back into an electronic system took significant manpower, time and expense.

44. PCH was on red divert through the middle of August 2017. Among other things, this affected PCH's emergency room, and forced the Hospital to refer patients to other hospitals. PCH also experienced long wait times in the emergency room and other hospital service areas, thereby causing patients to go to other hospitals for treatment. PCH saw a lingering impact as patients that would have been PCH patients ended up having their procedures and follow-up visits performed at other hospitals.

45. Referring doctors, knowing the issues that PCH was having, began referring their patients to other providers. Several of PCH's former referring doctors continued to use the new, substitute providers for an extended period of time, even following the rebuild of PCH's operating system.

46.  Competing hospitals began to increase their marketing around short wait times and, from PCH's perspective, capitalized on PCH's issues with servicing patients caused by the NotPetya event.

## PCH's Mitigation of Nuance's Errors

47.  PCH did everything it could reasonably do to contain and limit the damage caused to its system from the NotPetya virus.

48.  PCH reacted as quickly as possible to contain the virus and mitigate loss. To continue operations, PCH immediately migrated to a cloud-enabled Meditech system provided by CloudWave, a disaster recovery service.

49.  PCH provisioned a total of 59 new workstations around the hospital to allow employees to access the Meditech cloud system. These new workstations ran a Linux operating system (rather than Windows) to minimize the chance that they would be affected by the incident.

50.  Over many months, PCH worked with various cybersecurity vendors and law enforcement to understand, mitigate, and recover from this damaging incident.

51.  PCH eventually had to rebuild its computer network from the ground up and migrate data to newly created and configured environments safe from infiltration.

52.  Nuance did not help PCH mitigate its losses.

## PCH Damages Due From Nuance

53.  PCH suffered significant loss of business and revenue resulting directly from the viral infection. PCH engaged data breach counsel and a cyber forensics investigation firm to determine the extent of loss of PHI. PHI or other sensitive data was determined to have been potentially compromised, accessed, and/or potentially exfiltrated.

54. In response, PCH engaged a third-party vendor to assist in notifying those patients whose PHI was potentially affected by the incident in order to comply with HIPAA and HHS/OCR guidance.

55. PCH lost significant business and revenue, which it would not have lost but for the NotPetya infection through the Nuance-enabled gateway.

56. PCH's total damages were approximately $10.8 million dollars. These damages were measured by an independent forensic accounting firm, BDO. The damages consist of (a) system damage; (b) business interruption (from June 27, 2017 to approximately April 30, 2018); and (c) extra expenses.

57. These damage amounts were shared with Nuance.

58. To recover these losses, PCH first turned to its available insurance, from a Cyber Loss policy issued by CFC Underwriting Limited (on behalf of certain Lloyd's of London Underwriters), then from "ransom liability" coverage issued by National Union Insurance Co. (an AIG company).

59. Both insurers fully accepted their obligations and paid their entire limits applicable to the loss – $3 million from CFC and $1 million from AIG. That was all of PCH's available insurance to cover the loss caused by Nuance.

60. PCH was, and is, left with a net loss of over $6.8 million, exclusive of attorneys' fees and costs.

61. PCH requested payment of this $6.8 million from Nuance.

62. Nuance refused to make any payments to PCH.

## Nuance's Admissions

63. In a press release issued on June 28, 2017, Nuance acknowledged that it was the subject of the NotPetya malware incident: "Nuance Communications, Inc. . . . indicated that on Tuesday, June 27, portions of its network were affected by a global malware incident…."

64. On July 21, 2017, Nuance issued a second press release which confirmed that the malware incident impacted various services provided to its customers like PCH, including Nuance's HIM transcription platform, eScription LH, which is utilized by PCH:

> While Nuance has made significant progress in remediating systems related to the malware incident, the company nonetheless expects a material effect on financial results for its fourth fiscal quarter of 2017. The impact will be primarily related to Nuance's HIM transcription business as the company continues to reactivate customers during the quarter. Nuance expects to have service restored to substantially all of its clients on its flagship HIM transcription platform, eScription LH, within two weeks, while taking all measures to bring back its clients efficiently and securely. The eScription RH and Clinic 360 solutions that reside on the cloud-based HIM transcription platform, Emdat, were restored to their full functionality for that entire customer base on July 3, 2017. The Critical Test Results application, which is part of Nuance's Diagnostics radiology workflow solutions for all clients on July 16, 2017.

65. On July 28, 2017, Nuance issued a third press release providing a status update on restoring the functionality of its eScription LH platform to clients:

> Nuance Communications, Inc. . . . today provided an update on its restoration process following the previously reported June 27, 2017, global Not Petya malware incident that affected many companies in a wide range of industries around the world.
>
> As of today [July 28, 2017], Nuance Healthcare has brought back on-line the majority of its client base for its flagship eScription platform, restoring 75% of clients, which account for approximately 90% of the total annualized volume of lines that are transacted on that platform. The transcription platform is used by medical professionals for clinical documentation.

66. Nuance specifically admitted that it was the source of the malware that infected PCH. As Nuance wrote *to PCH*: "While Nuance was a direct victim of this criminal act, we

11

recognize that your organization was also an *indirect victim* of the same crime and understand that this incident has affected your operations."

67. Nuance thus accepted it was the "direct" source of the malware while PCH was the "indirect victim" being infected *by and through Nuance,* which happened because of the open IT tunnel that Nuance established with PCH with no firewall protection.

68. Nuance failed PCH. Nuance provided to PCH a very specific and specialized service that came with a clear, legally defined duty to *protect* PCH's confidential and sensitive medical information.

69. Nuance had the duty to have in place a manner of transferring data to PCH that did not leave PCH vulnerable to the NotPetya attack. Nuance failed in this duty.

70. Nuance is different from other companies in this regard, as Nuance specializes in handling confidential protected health information, and specifically promises (including as a contractual and regulatory legal duty) to protect confidential protected health information from compromise.

### Nuance's Further Admissions

71. In light of the NotPetya attack, Nuance took specific measures to better protect PCH's system from a similar attack (by passing data through a cloud-based hosted website) – which Nuance should have already had in place.

72. As confirmation of the obvious tunnel connection that allowed the malware to readily travel from Nuance to PCH, after the incident, Nuance set up an upgraded interface with PCH (through a hosted website). This is the kind of security measure that Nuance should have had in place before the incident, to guard against the spread of malware infection to its hospital customer PCH.

12

73. More specifically, *before* the NotPetya event – Nuance delivered Word documents directly to a Meditech background server for import into the Meditech ITS module. Nuance controlled this process with an Administrative user and an interface engine controlled by Nuance on one of Nuance's servers.

74. After June 27, 2017, (i.e., after Nuance infected PCH with the NotPetya virus), PCH asked Nuance to convert from the above Word-drop to a Text file drop approach. Nuance required PCH to move to a WebDAV share (third party) approach, whereby PCH retrieves the text file from the hosted website.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

75. Plaintiff incorporates the allegations stated in the above paragraphs as if fully set forth herein.

76. Nuance breached its contract with PCH, including the HIPAA Business Associate Addendum that obligates Nuance to "reimburse, indemnify and hold harmless [PCH] for all costs, expenses (including reasonable attorneys' fees), damages and other losses resulting directly from any negligent breach of this Business Associate Addendum, Security Incident or Breach of PHI maintained by" Nuance. Business Associate Addendum ¶ 7.

77. PCH's damages resulted from: (1) Nuance's negligent breach of the HIPAA Business Associate Addendum; (2) a Security Incident (as defined under HIPAA); and/or (3) a breach of PHI maintained on the Nuance platform.

78. The malware attack and resulting data breach are "Security Incidents" under HIPAA, which defines a "Security Incident" as "the attempted or successful unauthorized access,

13

use, disclosure, modification, or destruction of information or interference with system operations in an information system." 45 C.F.R. § 164.304.

79. Accordingly, pursuant to the indemnification provision of the HIPAA Business Associate Addendum, Nuance is obligated to reimburse and indemnify Nuance in full.

80. At all times relevant, PCH complied with all of its material obligations under the Agreement.

81. Nuance breached the Agreement by the above-described actions.

82. Defendant's breach of contract caused Plaintiff direct and consequential damages of $10.8 million, and caused Plaintiff to incur costs and attorneys' fees.

## COUNT II
### (Negligence)

83. Plaintiff incorporates the allegations stated in the above paragraphs as if fully set forth herein.

84. Nuance had a duty of care to PCH to exercise caution and take all appropriate safeguards to prevent a malware infection into PCH's computer systems.

85. By the above-described actions, Nuance was negligent in breaching its duties to PCH.

86. Nuance's negligence has caused Plaintiff direct and consequential damages of $10.8 million, and caused Plaintiff to incur costs and attorneys' fees.

\* \* \*

87. WHEREFORE, PCH demands judgment against Nuance and that it be ordered to pay PCH (a) all of its direct and consequential damages to be proven at trial, which are estimated to be $6.8 million (net of insurer payments); (b) attorneys' fees and costs; (c) other costs and

14

expenses incurred due to this action; (d) pre-judgment and post-judgment interest as allowed by West Virginia law; and (e) such other relief as this Court may deem just and proper.

## JURY DEMAND

The Plaintiff hereby demands a trial by a Mercer County jury for all issues so triable that are raised in this Complaint.

Dated: March 4, 2019.

Respectfully submitted,

Plaintiff, PRINCETON COMMUNITY HOSPITAL, INC., by its attorneys

Larry J. Rector (WV Bar #6418)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8151
larry.rector@steptoe-johnson.com

Gary Thompson (mot. for admission *pro hac vice* to be submitted)
Kristin C. Davis (mot. for admission *pro hac vice* to be submitted)
THOMPSON HAMMERMAN DAVIS LLP
1015 15th St. NW, Ste. 600
Washington, DC 20005
(202) 256-9910
gthompson@thompsonhd.com
kdavis@thompsonhd.com

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION, INC.,

        Plaintiff,

v.                                        Civil Action No. 19-C-59

NUANCE COMMUNICATIONS, INC.,

        Defendant.

## CIVIL SUMMONS

TO THE ABOVE-NAMED DEFENDANT:

**Nuance Communications, Inc.
1 Wayside Road
Burlington, MA 01803**

        IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Larry J. Rector, Plaintiff's attorney, whose address is Steptoe & Johnson PLLC, 400 White Oaks Boulevard, Bridgeport, West Virginia 26330, an Answer, including any related Counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within thirty (30) days after service of this Civil Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled action.

                                                                        *Julie Ball*
                                                              CLERK OF COURT

Dated: March 5th, 2019

                                                              By Her Deputy

8345821.1

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION, INC.

            Plaintiff,

v.                                                    Civil Action No. 19-C-59-MW

NUANCE COMMUNICATIONS, INC.

            Defendant.



FILED
MAR 1 8 2019
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

## STIPULATION PURSUANT TO W. VA. R. CIV. P. 6(b)

The parties, by their undersigned counsel, hereby stipulate that the time within which the defendant, Nuance Communications, Inc., must respond to the Complaint in this matter is extended to and including Monday, 13 May 2019.

Dated: March 13, 2019

                                                                Respectfully,

| Defendant, NUANCE COMMUNICATIONS, INC., by its attorneys, | Plaintiff, PRINCETON COMMUNITY HOSPITAL, INC., by its attorneys, |
|---|---|
| /s/ A.L. Emch<br>by /s/ Marcie A. B____ 4550<br>A.L. Emch (WV Bar #1125)<br>JACKSON KELLY PLLC<br>500 Lee Street East<br>Suite 1600<br>Charleston, WV 25301-3202<br>(304) 340-1172<br>aemch@jacksonkelly.com | /s/ Larry J. Rector<br>Larry J. Rector (WV Bar #6418)<br>STEPTOE & JOHNSON PLLC<br>400 White Oaks Boulevard<br>Bridgeport, WV 26330<br>(304) 933-8151<br>larry.rector@steptoe-johnson.com |