b. *Implementation Services.* Subject to the terms and conditions of the Agreement and this Schedule Nuance agrees to perform the Implementation in accordance with the service description, schedules and fees set forth in the applicable Statement of Work, and as further provided in the Clintegrity Schedule. The duration of Implementation Services is through the end of Implementation Closeout as defined in the applicable SOW.

c. *Continuing Education Services.* Subject to the terms and conditions of this Agreement, Nuance agrees to provide Customer supplemental services to support and enhance its CDMP Software, Systems and Process in accordance with and as part of the attached Statement of Work. The duration of Continuing Education Services begins at Implementation Closeout and continues through the end of the Initial Term.

d. *Conversion Services.* If purchased under an applicable Statement of work, Nuance shall perform the Conversion Services as provided in the Statement of Work and subject to the terms of this Agreement. The duration of Conversion Services is through the end of Implementation Closeout.

e. *Software Subscription.* From Implementation Closeout through the end of the Initial Term, Nuance shall provide the Subscription, including the Technical Support Services and Software Updates as provided in the Clintegrity Schedule. Thereafter, unless otherwise specified in a SOW, the Subscription shall renew only by further written agreement of the parties. Also, during the Initial Term, Nuance shall provide the Hosted Services as provided in the Clintegrity Schedule if Clintegrity CACDI is licensed or if Advanced CDI Reporting is purchased as set forth in an applicable Statement of Work.

f. *Customer Data.* Customer agrees to provide Nuance access to its clinical data and grants Nuance the right to copy, analyze and use the data to provide reports of its document processing environment and to improve service reporting and research. All enhancements and improvements created in whole or part using said data shall be and remain the sole property of Nuance. Additional Use of Data terms applicable to Clintegrity CDI or CACDI Software are set forth in Section 10 ("Data") of the Agreement.

g. *Access Agreements.* If Customer requires any further agreement as a requirement for access to Customer systems or data ("Access Agreement"), a copy of such Access Agreement shall be provided to Nuance for review prior to signature on the applicable Order. In the event an Access Agreement contains provisions for personal liability of accessing personnel, or liability of Nuance which is different from the liability as agreed-upon under this Agreement, such liability provisions shall be superseded by this Agreement to the extent of any conflict and any personal liability of such personnel shall be borne by Nuance as provided under this Agreement. Upon Nuance's request, the Parties shall agree upon suitable modifications to such Access Agreement to document the foregoing.

h. Individual SOWs are subject to the terms and conditions of this Schedule and the Agreement. SOWs shall have further information regarding scope of Products Services.

3. **Grant of Rights.** The license grant and related terms and conditions for the Clintegrity CDI OR CACDI Software are set forth in the Clintegrity Schedule.

4. **Limited Warranties.** The Services warranty terms are set forth in Section 11.3 of the Agreement and are subject to other terms as set forth in Section 11 of the Agreement. The Software warranty terms are set forth in Section 4 ("Supplemental Software Warranty Terms") of the Clintegrity Schedule, which references Section 11.1 of the Agreement and are subject to other terms as set forth in Section 11 of the Agreement.

5. **Fees and Payment.** Individual SOWs contain details relating to timing of payments (Invoicing Terms).

6. **References.** Customer agrees to act as a marketing reference for the JATA Products and Services, to help Nuance actively promote and sell these to other customers in the healthcare market. Customer obligations under this section include, but are not limited to, supporting site visits (no more than 1 per calendar quarter) and phone calls by potential customers (no more than 3 per month), and acting as a resource for general promotional activities. Customer shall assist Nuance in developing ROI statistics for input into the business planning process, and provide supporting material for case studies which illustrate the benefits of the JATA Products and Services.

Schedule for
## CLINTEGRITY SOFTWARE PRODUCTS AND SERVICES
("CLINTEGRITY SCHEDULE")

This Schedule is entered into in connection with one or more Orders ("Orders") which are separately signed, and which are hereby incorporated into and made part of this Schedule by reference. In the event of a conflict between this Schedule and the terms of an Order, the terms of the Order will prevail. Company may also be referred to as "Licensee" in applicable Orders.

1.  Definitions. For purposes of this Schedule, the following capitalized terms shall have the following meanings:

a.  "Fees" means the fees for the Services and Software (and Hosted Services if applicable) as set forth on the Applicable Order.

b.  "Designated Equipment" shall mean the computer hardware and the operating system designated by Nuance on the Order that the Company will use to operate the Software and Third Party Software.

c.  "Equipment Site" shall mean the site specified in the Order where the Designated Equipment is physically located.

d.  "Hosted Service" means a Nuance proprietary subscription-based software as a service (SaaS) offering specified in an Order or SOW. Any software provided by Nuance which is sited at Customer (for example client software to access the Hosted Services) is considered Software and subject to the terms governing Software.

e.  "Installation of Software":

    i.   For Company-hosted Software, means the date that the Software is first loaded onto Company's Designated Equipment at any of the Equipment Sites;

    ii.  For Nuance-hosted Software, means the date that the Software is enabled and configured for Company at Nuance's hosted site, and Company is given access to the Software by Nuance.

    iii. For Software which is hosted in both locations (Company and Nuance), means the date that the Software to be installed at the Company Equipment Site(s) is first loaded onto Company's Designated Equipment at any of the Equipment Sites, and the Nuance-hosted Software is implemented for Company on Nuance's data center.

f.  "Maintenance" shall mean the Software corrections provided by Nuance pursuant to this Schedule. This definition supersedes the definition of Maintenance Services in the Agreement.

    "Order Effective Date" means the date of last signature on the applicable Order.

g.  "Plan" shall mean Nuance's Software Maintenance and Support Plan which provides for Company to receive Support, Maintenance, and Updates and Upgrades for Software

h.  "Ready for Live Use" or "Live Date" means the date Installation of Software has occurred, and completion of the first Functional Test at any of the Equipment Sites has occurred, and the Software (or Hosted Services as applicable) is capable of processing data. "Functional Test" means the process of testing the Software or Hosted Services to verify that it operates substantially in accordance with Nuance's then-current published specifications. Upon Ready for Live Use, delivery of the applicable Software and Services contracted for shall be complete.

i.  "Software" shall mean the Programs as defined in Section 1 ("Definitions") of the Agreement.

j.  "Support" shall mean the reasonable technical telephone consultation provided to Company's designated contacts relating to the operation of Software

k.  "Test System" shall mean a computer hardware and operating system, separate and distinct from the Designated Equipment, as reviewed and approved by Nuance, to be used by Company for testing the Software, Updates, and Upgrades.

l.  "Update" means a release of Nuance Software, issued as part of Maintenance Services, that may include minor feature enhancements, and/or bug fixes and/or fixes of minor errors and/or corrections, and typically is identified by an increase in a release or version number to the right of the first decimal (for example, an increase from Version 5.1 to 5.2 or from Version 5.1.1 to 5.1.2). "Update" shall not be construed to include Upgrades.

m.  "Upgrade" means a release of Nuance Software, issued as part of Maintenance Services, that may include some feature enhancements and/or additional capabilities (functionality) over versions of the Nuance Software previously supplied to Company, and typically is identified by an increase in the release or version number to the left of the decimal (for example, an increase from Version 5.2 to Version 6.0). Upgrades do not include new Software and/or products that

Nuance, in its sole discretion, designates and markets as being independent from the previously purchased Nuance Software.

n.  "Work Plan" is defined in paragraph (a) of Section 5 ("Implementation Services") below.

2.  Scope of Coverage and Product Description. This Clintegrity Schedule covers the Clintegrity Products as referenced on an applicable Order. Individual Orders shall have further information regarding scope of deliverables and Products.

3.  Grant of Rights.

a.  Subject to the terms and conditions of the Agreement, including but not limited to Section 3 ("Grant of Rights") of the Agreement), and this Schedule and the applicable Order (including but not limited to payment of the relevant Fees), Nuance hereby grants Company a limited, non-exclusive, non-transferable, non-sub-licensable domestic (United States) license, for the term specified in the applicable Order, to use the Software and the Documentation described, including any Third Party Software, solely in accordance with the terms and conditions of the Agreement and the following limitations in addition to those set forth in Section 3.3 ("Proprietary Rights, Restrictions") of the Agreement:

i.  Company may only use the number of copies of object/executable code versions of the Software listed in the Order for which Company has paid a license fee, and such use must be for Company's own internal business purposes only;

ii.  the Software shall be used only on the Designated Equipment at the Equipment Site, as well as on a Test System; and

iii.  Company agrees to notify Nuance in writing of any requested change in the Equipment Site but such change shall not become effective without Nuance's express written permission.

iv.  Company may not copy the Software except as necessary to use the Software on the Designated Equipment. Company may make one (1) archival backup copy of the Software licensed. If the Designated Equipment is temporarily inoperable, Company may use up to the authorized number of copies of the Software on a backup machine until the Designated Equipment is repaired.

v.  For Software which is hosted by Nuance in connection with Hosted Services as defined in the Agreement, in addition to the foregoing provisions, the following provisions apply:

1.  Company's right to access and use the Hosted Services and any third party software and applications ("Third Party Products") incorporated as part of and/or used in connection with Hosted Services, shall commence on the date that Nuance advises Company that Ready for Live Use has occurred. This right to access and use will terminate upon the earlier of (i) expiration of the Limited Term described in the applicable Order, (ii) notice of termination in accordance with the Agreement, or (iii) Company's failure to comply with the terms and conditions contained herein.

2.  Nuance grants to Company, and Company accepts, a non-exclusive, personal and non-transferable, fee-based, limited license to access the Hosted Services via the access means specified by Nuance for its own internal business purposes, by Authorized Users.

3.  Company acknowledges that Nuance does not pre-screen or validate any manner of information or data submitted by Company, and Company alone shall be fully responsible and liable for such input.

4.  Upon termination or expiration of the applicable Order, Company will no longer be permitted to access the Hosted Services nor the databases relevant to the Hosted Services. Company accordingly understands that at that time, Nuance will be entitled to delete all such data and databases from its servers in Nuance's sole discretion.

b.  *Documentation.* Nuance shall provide Company with a full set of current electronic Documentation for the Software. These documents may be changed from time to time by Nuance, and additional documents may be produced from time to time by Nuance which, when so designated by Nuance, shall be deemed to be included in the Documentation upon delivery to Company. Upon the prior written approval of Nuance, Company may make copies of the Documentation for Company's own internal use, provided that the Documentation is reproduced with Nuance's copyright and trademark notices. Documentation may be made available by Nuance on-line, via disc, on paper, or by other means as determined by Nuance.

c.  *Designated Equipment.* Unless expressly provided for in an Order duly executed by the parties, Nuance shall have no responsibility for the procurement, installation or maintenance of the Designated Equipment or the Third Party Software. Company understands and acknowledges that Nuance makes no warranties of any kind regarding the Third Party Software or the Designated Equipment.

4.  Supplemental Software Warranty Terms. These terms supplement, and, to the extent of any conflict, modify the terms of Section 11.1 of the Agreement.

a. Notwithstanding Section 11.1, the "Warranty Period" shall begin upon Installation of Software and end at Ready for Live Use. For warranty repairs under Section 11.1, in the event Company believes that Nuance has breached the foregoing warranty, Company shall provide Nuance with prompt written notice of the claimed defect and information sufficient to permit Nuance to recreate the defect. If the defect is such that it would substantially affect the performance of the Software under normal use, Nuance shall use commercially reasonable efforts to cure said defect within a reasonable period of time or to replace Company's copy of the Software with another copy of the Software in Nuance's sole discretion. After expiration of the Software Warranty Period, all Support, Maintenance, Updates and Upgrades will be available only through Nuance's Software Support and Maintenance Plan, as described in the Agreement, for so long as Company keeps its account current. The foregoing (along with any explicit remedies in Section 11.1) constitutes Company's sole and exclusive remedies for any claimed breach of warranty. Notwithstanding the foregoing, however, where a loss of data is caused by a confirmed failure of the Software, Nuance agrees to provide reasonable assistance to Company in the recovery of data for the period from the latest Company backup of the data until the failure, such period not to exceed twenty-four (24) hours, but Nuance shall have no liability for any damages caused by any loss of data. The foregoing states Nuance's sole responsibility to Company with respect to any data loss.

b. Nuance's Services and Software products may contain or use CPT codes, ICD-10 codes or other industry-specified data or information ("Information"). This Information may be provided to Nuance, or Licensee, by the CMS, the AMA or other third parties. NUANCE MAKES NO WARRANTIES REGARDING THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION. NUANCE'S AND SUCH THIRD PARTIES' SOLE RESPONSIBILITY SHALL BE TO USE REASONABLE EFFORTS TO CORRECT KNOWN DEFECTS IN THE SERVICES AND SOFTWARE. NUANCE AND SUCH THIRD PARTIES SPECIFICALLY DISCLAIM ANY LIABILITY FOR ANY CONSEQUENCES DUE TO USE, MISUSE OR INTERPRETATION OF INFORMATION. The third party provider(s) described above require that usage of the Services and Software Product(s) that contain CPT codes be limited to the United States of America.

5. **Implementation Services (Installation and Training) and Other Services.**

a. Within thirty (30) days from Order Effective Date, Nuance's Project Manager will initiate a project meeting that shall include Company's representatives, at the director level or higher, from both the users of the Software and the IS department. A detailed implementation project plan ("Work Plan"), including milestones and milestone dates shall be established and agreed upon during this meeting.

b. During implementation, Nuance shall provide hardware and network support only if the hardware was purchased from and installed by Nuance. At Company's request, Nuance may provide support for systems not purchased from or configured by Nuance at Nuance's then-current rates plus travel and out-of-pocket expenses, if applicable.

c. Milestones identified in the Work Plan shall be completed sequentially. If Company has any issues regarding the Software, it is Company's responsibility to specifically identify them to the Project Manager. The issues must be resolved before moving on to the next milestone.

d. Company agrees that migrating the system to production and/or incorporating the system into the normal ongoing business processes, constitutes acceptance of the Software and the implementation shall be deemed complete and Company will be transferred to support.

e. If the scope of Services is modified from the agreed upon Work Plan, both parties will agree upon any modifications before such out of scope Services are performed. The parties may mutually agree to amend or modify the provision of Services provided for hereunder by way of an Order executed by both Parties which sets forth the modification of fees and Services.

f. Company shall provide Nuance with secure access to Company's and, if and as necessary, third party systems provided by vendors or suppliers to Company, as required for Nuance to perform implementation or other Professional Services. Any terms and conditions which may be imposed by any such third parties for example without limitation Company's third party EHR, EMR or billing system providers, shall be solely Company's responsibility and Nuance shall not be required to agree to additional material requirements or liability in connection with such access.

g. <u>Delay or Cancellation.</u> If Ready for Live Use has not occurred by the expiration of ninety (90) days following the date set for Ready for Live Use under the Work Plan for the applicable Order, through no fault of Nuance, all milestones identified in the Work Plan shall be deemed complete and all outstanding Software, Interface and Third Party Software Fees, Software Professional Service Fees, Software Support and Maintenance Fees, and Equipment Fees shall become immediately due and payable. In such event, Nuance shall have no further obligation or liability, except for ongoing Support and Maintenance for which Company has subscribed. If there is a mutual delay and the Work Plan dates and milestones are not met, then both parties shall mutually determine revised Work Plan dates and milestones which may only be changed upon mutual agreement of the parties in writing. Company must provide Nuance with at least two (2) weeks prior written notice of cancellation of scheduled Work Plan activities. Cancellations after such two (2) week period shall

be subject to a cancellation fee to be paid by Company equal to the number of hours of scheduled Services for any such activity cancelled multiplied by Nuance's then current hourly rate for such Services.

6. Interfaces.

a. All interface pricing is based on the assumption that Company meets Nuance interface specifications. If Company does not meet those specifications additional fees may apply. Company will migrate the Interface's operational configuration, as installed on the base PC, to the additional licensed PCs. Company acknowledges that some client host programming may be required by its staff. The response time of the interface is dependent upon the response time of the client host machine. Successful completion of the interface is contingent upon the mutual support and cooperation of the Company's Medical Records and HIS staffs and Nuance.

b. Revisions to interfaces due to, but not limited to, changes in Company's environment, hardware, or non-Nuance Software are not covered under the Plan, but are available at Nuance's then-current rates plus out-of-pocket expenses. Additional Interfaces are available upon the Company's written request at Nuance's then-current rates.

7. Support and Maintenance Services.

a. Support and Maintenance Plan. Commencing on Ready for Live Use, Company shall automatically be enrolled in the Support and Maintenance Plan (the "Plan") unless or until such enrollment is terminated earlier in accordance with the Agreement. Company's length of enrollment in the Plan shall be determined as follows: (a) If Company has licensed the Software for a limited term, Company shall be enrolled in the Plan until the completion of such limited term as specified on the applicable Order. (b) If Company has licensed the Software for a perpetual term, then, unless otherwise specified on an applicable Order, following an initial Maintenance and Support Services term ("Initial Term") which commences upon Ready for Live Use, Company's enrollment in the Plan will be provided on an annual basis, and Company's enrollment in the Plan will automatically renew for subsequent one (1) year terms following the Initial Term ("Renewal Terms"), unless either party terminates the Plan by providing at least ninety (90) days written notice to the other party, prior to the beginning of the first or any subsequent Renewal Term.

b. Designated Contacts. Company shall notify Nuance in writing of the name(s) of designated contacts, and Company may change such designated contacts upon written notice to Nuance.

c. Updates; Upgrades. If Company subscribes to the Plan during any period when Nuance makes Updates or Upgrades, the Updates or Upgrades shall be provided solely in accordance with the Plan. Nuance shall have no obligation to revise or update the Software or to support any version of the Software other than the then-current version and the immediately previous version.

d. Scope of Services. Provided that Company subscribes to the Plan and keeps its account with Nuance current, and follows the procedures for corrective maintenance as set forth in the then-current Nuance Client Support Manual provided to Company by Nuance, reasonable efforts will be utilized to:

   i.   Supply corrections for problems that Nuance diagnoses as defects in the currently supported version of the Software and will provide Company with any known problem solutions relating to the Software as such solutions become known to Nuance; supply corrections to tables which are part of the Software for inaccuracies within the database that have been brought to the attention of Nuance. Such corrections do not include corrections to Company's data, which was entered inaccurately or otherwise corrupts the database.

   ii.  Provide Company with Updates and Upgrades, including changes to the Software or databases to reflect current information, such as modifications, refinements or enhancements that result from the usual Software maintenance process, which Nuance elects to incorporate and make a part of Software and does not separately price or market.

   iii. Provide appropriate Documentation for the use and installation of the Software.

   iv.  Provide remote, telephone consultation from 8:00 a.m. to 8:00 p.m., Eastern Time, Monday through Friday, exclusive of Nuance's business holidays, at 1-800-892-5049. Additional on-line Services are also available 24/7 for non-critical support.

   v.   Provide remote maintenance Services on all Software Products using a Nuance provided communication utility with generic login, or, at Company's expense, a Company selected SSL solution that needs to be verified and validated by Nuance's technology group for approval. Remote maintenance Services may include installation and use of a remote diagnostics tool which is installed alongside the Clintegrity application server programs, allowing server and database information to be sent to or viewed by Nuance (for example without limitation alarms and diagnostics information), for the purpose of Nuance providing maintenance and support.

   vi.  Provide on-site support, if requested and at mutually agreeable times, at Nuance's then-current rates, plus reimbursement for all travel and out-of-pocket expenses actually incurred.

vii. For applicable Nuance Products, once initial implementation has occurred, on an ongoing basis, Nuance will provide Company with all Centers for Medicare & Medicaid Services ("CMS") mandated changes to the Product, all supported ICD code changes and errata as noted by the AHA Coding Clinics, and all Current Procedural Terminology ("CPT") code changes and errata as released by the American Medical Association ("AMA"). Nuance's right to provide CPT code changes in the Product is dependent upon continuing contractual relations with the AMA. Upon requirement by CMS, Nuance shall be compliant to U.S. federally-mandated standards.   Significant CMS, AHA, CPT, AMA or other industry or state or federally mandated changes which impact the Products sold under a relevant Order may at Nuance's option be treated by Nuance as additional Nuance Software which would require additional charges and be undertaken under a follow-on Order to be negotiated in good faith and executed by the Parties. For Nuance's labor for one-time charges, such rates shall be set using Nuance's then-current labor rates.

e. Company acknowledges the following:

i. Company will provide a suitable location and environment for the Software, the Designated Equipment, and such other hardware and software as shall be required to operate the Software.

ii. Company will comply with installation documentation, and will maintain current back-up copies of its data, of administration tables, the application, and of any purchased interface. Company shall be responsible for the maintenance of all tables (e.g. cost outlier tables, synonyms, reimbursement rates, etc.); the means for such maintenance is included in the Software.

iii. Company will promptly implement all corrections, and any and all Updates and Upgrades supplied by Nuance to Company. Nuance shall not be required to provide Support and Maintenance for any preceding version after ninety (90) days following delivery of any correction or Update or Upgrade. Any and all corrections and Updates and Upgrades must be implemented within ninety (90) days from delivery of any correction or Update or Upgrade in order to be covered under the Support and Maintenance Plan.

iv. Company will reimburse Nuance for time and expenses incurred by Nuance in connection with any support provided which is not necessitated by defects or non-conformities in the Software, including time and expenses incurred relative to rendering any computer or LAN capable of operating the Software. Nothing contained in this Section shall require Nuance to respond to particular requests or complaints by Company, except as otherwise specifically provided herein. Nuance assumes no responsibility to support the operating system or Company's hardware.

v. In the event that Nuance ceases Support and Maintenance for the Software for its general customer base, Nuance may cease providing Support and Maintenance for the Software at any time upon two (2) years notice.

vi. Nuance acknowledges that federal and state governments may mandate compliance by Company with various regulatory requirements, some of which may necessitate modifications to the Software. Company shall communicate all applicable state and federal regulations to Nuance in a timely manner. Nuance will modify, as technically feasible, the specific functionality contained in the Software as acknowledged in the Documentation, so that Company may comply with the mandated federal, and, if applicable, state requirements.   If applicable, Nuance will provide modifications for state regulations for the Software for the state in which Company's Equipment Site(s) is located (additional states require an additional fee).   Significant state or federally mandated changes which impact the Products sold under a relevant Order may at Nuance's option be treated by Nuance as additional Nuance Software which would require additional charges and be undertaken under a follow-on Order to be negotiated in good faith and executed by the Parties. For Nuance's labor for one-time charges, such rates shall be set using Nuance's then-current labor rates.

vii. Nothing in this Section shall obligate Nuance to customize the Software for Company, develop particular new features, or modify Software for use on a different CPU.

8. **Advanced CDI Reporting Hosted Services Terms and Conditions.** The following apply to the Advanced CDI Reporting Hosted Services, if provided under an applicable SOW.

a. Hosted Services. Nuance agrees to have a third party under contract with Nuance (or at its option perform any of such obligations itself) host, operate and maintain the equipment and software comprising the Hosted Services, and to allow Customer to access and use the Hosted Services, during the Service Term, in accordance with the terms and conditions of this Agreement.

b. Support. During the Service Term, Nuance shall provide Customer with support in accordance with the following terms and conditions.

i. Error Correction; Maintenance. Nuance shall promptly repair any errors which are reported either in writing or verbally.   An error is defined as any operation of the Hosted Services that is different than described in the Documentation. An error also includes a "bug" or "crash" in which the Hosted Services or portions of the Hosted

Services cease to function. All reasonable attempts will be made to provide triage and documentation of root cause for issues within 24-48 hours of the identification and reporting of an issue. Nuance has second tier support arrangements in place with its vendor JVION, and resolution of issues will be worked with Nuance receiving support from JVION as needed, under JVION's S escalation procedures and timelines in place with Nuance. Downtime associated with scheduled maintenance or upgrades may occur between 7 PM - 9 AM ET, and on weekends.

ii. Question and Answer Support. Nuance will provide question and answer support during the business hours below for Authorized Users.

iii. Service Hours. Nuance shall provide service and support from 8:30 am to 5:00 pm, Monday through Friday in Customer time zones, excluding the following holidays: New Year's Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day, and Christmas Day. Nuance shall provide seven days a week, 24-hour per day support for Emergency Events. An Emergency Event is defined as a problem that prevents users from accessing the Hosted Services.

iv. Customer Contacts. Customer shall identify an Administrative Contact, a Technical Contact and an Executive Contact. These individuals will communicate to Nuance about the services rendered hereunder and then will be responsible for communicating, as needed, with the staff at Customer.

v. No commitment to program interoperability. In a Microsoft environment, it is possible that programs provided by other vendors (e.g. an email program), may conflict with access to the Hosted Software. Nuance does not agree to resolve any such conflicts, if they are discovered.

vi. No support for Vendor Supplied Software. Software residing on Customer's work stations (such as Word and Microsoft Operating Systems) is not covered by this Agreement. Upgrades and new releases of all such third-party software are not provided or maintained by Nuance and must be obtained separately by Customer.

c. Customer Responsibilities.

i. Project Manager. During installation and operation of the Hosted Services, Customer shall provide a qualified individual who will manage and monitor the installation and assist with any issues that may arise during routine operation of the Hosted Services.

ii. Equipment and Internet Connectivity. Customer shall provide, at its own expense, telecommunications (including Internet connectivity), firewall, and all equipment and operating system software necessary for Authorized Users to access and use the Hosted Services, as recommended in the Documentation. Nuance shall have no responsibility for any costs incurred in connection with modifications or enhancements to Customer's system necessary for implementing Customer's interface with the Hosted Services or in connection with Customer's use of the Hosted Services. The communications and network interoperability requirements for Internet access to the Hosted Services are as described in the Documentation.

iii. Payment. Upon commencement of the Service Term, Nuance shall invoice Customer for the Fees in accordance with the Statement of Work, and Customer shall pay to Nuance each invoice within thirty (30) days of the date of such invoice.

d. Term and Termination.

i. Service Term. Subject to the right to terminate as set forth in this Agreement, the initial Service Term ("Service Term") shall be as set forth in the applicable Statement of Work, with renewals if and as specified in a the applicable Statement of Work. Upon expiration or termination of the applicable Order or the Agreement, by either party, the Service Term shall terminate.

ii. Effect of Termination. Upon the expiration or termination of the Service Term, Customer's rights to access and use the Hosted Services will terminate. Neither the expiration nor termination of the Service Term shall affect Customer's payment obligations. If the Service Term is terminated prior to the completion of the then-current Service Term, other than by Customer in accordance with the Agreement for Nuance's uncured material breach, Customer shall pay Nuance a fee equal to the total amount of Fees that would have come due over the remainder of the then-current Service Term but for the early termination ("Early Termination Fee"). Nuance shall invoice Customer, in full, for the Early Termination Fee following the date of early termination of the Service Term

# JACKSONKELLY PLLC

FILED
MAR 27 2019
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

500 LEE STREET EAST • SUITE 1600 • P.O. BOX 553 • CHARLESTON, WEST VIRGINIA 25322 • TELEPHONE: 304-340-1000 • TELECOPIER: 304-340-1130
www.jacksonkelly.com

**Direct Dial: (304) 340-1172**
**Email: aemch@jacksonkelly.com**

25 March 2019

Julie Ball, Clerk
Circuit Court of Mercer County
1501 Main Street
Princeton, WV  24740

>      **Re:   Princeton Community Hospital Association, Inc. v. Nuance Communications, Inc.**
>      **Civil Action No. 19-C-59-MW**

Dear Ms. Ball:

Attached please find the following documents for filing in the reference case:

1.  Motion for *Pro Hac Vice* Admission of Jennifer B. Seale, along with supporting Application for Admission, Statement of Endorsement and Proposed Order;

2.  Motion for *Pro Hac Vice* Admission of David C. Lashway, along with supporting Application for Admission, Statement of Endorsement and Proposed Order;

3.  Motion for *Pro Hac Vice* Admission of John W. Woods, along with supporting Application for Admission, Statement of Endorsement and Proposed Order.

As indicated by the Certificate of Service, all counsel of record has been served with a copy.

Sincerely,

A. L. Emch

ALE/llc
Enclosure
cc:     Counsel of Record

Bridgeport, WV • Charleston, WV • Martinsburg, WV • Morgantown, WV • Wheeling, WV
Denver, CO • Crawfordsville, IN • Evansville, IN • Lexington, KY • Akron, OH • Pittsburgh, PA • Washington, DC

4838-7004-1486.v1

FILED

MAR 2 7 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

## IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

        Plaintiff,

v.                                Civil Action No. 19-C-59-MW

NUANCE COMMUNICATIONS, INC.,

        Defendant.

## MOTION FOR *PRO HAC VICE* ADMISSION OF JENNIFER B. SEALE

Pursuant to Rule 8.0 of the Rules of Admission to the Practice of Law in the State of West Virginia, Jennifer B. Seale of the law firm of Baker & McKenzie LLP, as applicant, and A. L. Emch of the law firm of Jackson Kelly PLLC, as an attorney in good standing in West Virginia and local counsel under the aforesaid rule, respectfully move this Court to grant Jennifer B. Seale, not being lawfully licensed and admitted to the practice of law in the State of West Virginia, the privilege to appear in this Court in the above-captioned civil action as an attorney on behalf of Defendant Nuance Communications, Inc.

In support of this Motion, the Verified Statement of Application for *Pro Hac Vice* Admission by Jennifer B. Seale with the attached Statement of Endorsement are submitted as Exhibit 1.

4850-1390-5806.v1

Respectfully submitted,

NUANCE COMMUNICATIONS, INC.,

A. L. Emch (WVSB# 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322-0553
Phone: (304) 340-1172
*Counsel for Nuance Communications, Inc.*

4850-1390-5806.v1

FILED

MAR 27 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

**PRINCETON COMMUNITY HOSPITAL
ASSOCIATION, INC.**

Plaintiff,

v.                                                          Civil Action No. 19-c-59-MW

**NUANCE COMMUNICATIONS, INC.**

Defendant.

## APPLICATION FOR ADMISSION *PRO HAC VICE* OF JENNIFER B. SEALE

Comes Now Jennifer B. Seale of the law firm of Baker & McKenzie LLP, and files this application pursuant to Rule 8.0 of the West Virginia Rules for Admission to the Practice of Law, to be admitted *pro hac vice* for the case styled *Princeton Community Hospital Association, Inc. v. Nuance Communications, Inc.* and respectfully states as follows:

1.    I seek permission to appear *pro hac vice* as counsel for Defendant Nuance Communications, Inc. in the above-captioned matter.

2.    I am an attorney with Baker & McKenzie LLP, which is located at 815 Connecticut Avenue, Washington, DC 20006.  I am a member in good standing with the Bar of the District of Columbia and my bar number is 997368, and a member in good standing with the State Bar of New York and my bar number is 4787123.

3.    The name, address and telephone number of the registration agency of all courts in which I am admitted are as follows:

United States District Court for the
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001
T: (202) 354-3000

4839-1215-3484.v1

4.     A. L. Emch (WV State Bar #1125) will be the responsible local attorney in this matter and his consent to do so is in his verified endorsement of this application.  Mr. Emch is an active member in good standing with the West Virginia State Bar.  Mr. Emch's contact information is as follows:

> Jackson Kelly PLLC
> 500 Lee Street, Suite 1600
> P.O. Box 553
> Charleston, WV 25322-0553
> T: (304) 340-1172
> F: (304) 340-1050
> alemch@jacksonkelly.com

5.     I have been involved in the following proceeding before West Virginia tribunals in the preceding 24 months.

None

6.     Members of my firm have not been involved in any proceedings before West Virginia tribunals in the preceding 24 months except as set forth in Exhibit A.

7.     I certify that I am a member in good standing and authorized to appear in the courts identified in Paragraph 3 above, and I certify that I have not been disciplined in any such jurisdiction.

8.     I consent to the jurisdiction of this Court and I agree to comply with all laws, rules and regulations of West Virginia state and local governments, where applicable, including taxing authorities and any standards for pro bono civil and criminal indigent defense services.

9.     A fee of Three Hundred Fifty and 00/100 Dollars ($350.00) has been paid to the West Virginia State Bar relating to this application.  Furthermore, a copy of this application is being sent to the West Virginia State Bar.

4839-1215-3484.v1

Wherefore, Jennifer B. Seale respectfully requests that the Court grant his Application for Admission *Pro Hac Vice* in the referenced case.

Dated: March 21, 2019.

Respectfully submitted,

A.L. Emch (West Virginia Bar # 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322-0553
(304) 340-1000

4839-1215-3484.v1

## VERIFICATION

District of Columbia                    )
                                        )
                                        )

    I, Jennifer B. Seale, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know that contents thereof; and that the contents are true of my own knowledge.

*Jennifer B. Seale*

DC Bar No.: 997368

Subscribed and sworn to before me
this 21 day of March, 2019.

Notary Public, State of *District of Columbia*
My Commission expires *October. 14, 2021*



IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

FILED
MAR 27 2019
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

       Plaintiff,

v.                                        Civil Action No. 19-C-59-MW

NUANCE COMMUNICATIONS, INC.,

       Defendant.

## STATEMENT OF ENDORSEMENT

Pursuant to Rule 8.0(c) of the Rule for Admission to the Practice of Law in the State of West Virginia, A. L. Emch, endorses the Verified Statement of Application for *Pro Hac Vice* Admission by Jennifer B. Seale and agrees to participate in the referenced case as local counsel.

Respectfully submitted,

A. L. Emch (WVSB #1125)
JACKSON KELLY PLLC
500 Lee Street, Suite 1600
P.O. Box 553
Charleston, WV 25322-0553
T: (304) 340-1172
F: (304) 340-1050
aemch@jacksonkelly.com

*Counsel for Defendant,*
*Nuance Communications, Inc.*

4816-0498-4206.v1

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, TO WIT:

     I, A. L. Emch, upon first being sworn and upon oath, state that I have appeared as counsel of record for Nuance Communications, Inc. in the case styled *Princeton Community Hospital, Inc. v. Nuance Communications, Inc.*, Civil Action No. 19-C-59, and that the matters set forth in this Verified Statement of Application for Admission *Pro Hac Vice* of Jennifer B. Seale are true and accurate to the best of my knowledge and belief; and that I agree to participate as the local counsel of record as provided for by the Rules of this Honorable Court.

_____
A. L. Emch

Taken, subscribed to and sworn before me on this **25th** day of March, 2019.

My commission expires: **Sept. 30, 2023**

Official Seal
Notary Public, State of West Virginia
Barbara A Bowling
16 Hillsdale Circle
Scott Depot, WV 25560
My Commission Expires September 30, 2023

_____
Notary Public

4823-7942-3374.v1

FILED
MAR 27 2019
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

     Plaintiff,

v.                                   Civil Action No. 19-c-59-MW

NUANCE COMMUNICATIONS, INC.,

     Defendant.

## CERTIFICATE OF SERVICE

I, A. L. Emch, counsel for Nuance Communications, Inc., certify that on this 25th day of

March, 2019, the **Motion for _Pro Hac Vice_ Admission of Jennifer B. Seale** was filed and served

via U.S. Mail to the following:

                  Larry J. Rector, Esquire
                  STEPTOE & JOHNSON PLLC
                  400 White Oaks Boulevard
                  Bridgeport, WV   26330

                  A.  L. Emch (West Virginia Bar # 1125)

FILED

MAR 27 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

## IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

      **Plaintiff,**

v.                                                              Civil Action No. 19-C-59-MW

NUANCE COMMUNICATIONS, INC.,

      **Defendant.**


### MOTION FOR *PRO HAC VICE* ADMISSION OF DAVID C. LASHWAY

Pursuant to Rule 8.0 of the Rules of Admission to the Practice of Law in the State of West Virginia, David C. Lashway of the law firm of Baker & McKenzie LLP, as applicant, and A. L. Emch of the law firm of Jackson Kelly PLLC, as an attorney in good standing in West Virginia and local counsel under the aforesaid rule, respectfully move this Court to grant David C. Lashway, not being lawfully licensed and admitted to the practice of law in the State of West Virginia, the privilege to appear in this Court in the above-captioned civil action as an attorney on behalf of Defendant Nuance Communications, Inc.

In support of this Motion, the Verified Statement of Application for *Pro Hac Vice* Admission by David C. Lashway with the attached Statement of Endorsement are submitted as Exhibit 1.

4825-5486-2734.v1

Respectfully submitted,

NUANCE COMMUNICATIONS, INC.,

_____

A. L. Emch (WVSB# 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322-0553
Phone: (304) 340-1172
***Counsel for Nuance Communications, Inc.***

> FILED
>
> MAR 27 2019
>
> JULIE BALL
> CLERK CIRCUIT COURT
> MERCER COUNTY

## IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

**PRINCETON COMMUNITY HOSPITAL
ASSOCIATION, INC.**

        **Plaintiff,**

v.                                          **Civil Action No. 19-c-59-MW**

**NUANCE COMMUNICATIONS, INC.**

        **Defendant.**

## APPLICATION FOR ADMISSION *PRO HAC VICE* OF DAVID C. LASHWAY

Comes Now David C. Lashway of the law firm of Baker & McKenzie LLP, and files this application pursuant to Rule 8.0 of the West Virginia Rules for Admission to the Practice of Law, to be admitted *pro hac vice* for the case styled *Princeton Community Hospital Association, Inc. v. Nuance Communications, Inc.* and respectfully states as follows:

    1.     I seek permission to appear *pro hac vice* as counsel for Defendant Nuance Communications, Inc. in the above-captioned matter.

    2.     I am an attorney with Baker & McKenzie LLP, which is located at 815 Connecticut Avenue, Washington, DC 20006. I am a member in good standing with the Bar of the District of Columbia and my bar number is 458731, and a member in good standing with the State Bar of New York and my bar number is 496939.

    3.     The name, address and telephone number of the registration agency of all courts in which I am admitted are as follows:

                Supreme Court of the United States
                1 First Street, NE
                Washington, DC 20543
                T: (202) 479-3000

4839-1215-3484.v1

United States Court of Federal Claims
Howard T. Markey National Courts Building
717 Madison Place, NW
Washington, DC, 20439
T: (202) 357-6400

United States Court of Appeals
District of Columbia Circuit
E. Barrett Prettyman
U.S. Courthouse and William B. Bryant Annex
333 Constitution Avenue, NW
Washington, DC 20001
T: (202) 216-7000

United States District Court for the
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001
Room 1225
T: (202) 354-3000

United States Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210
T: (617) 748-9057

New York State Court of Appeals
20 Eagle Street
Albany, NY 12207
T: (518) 455-7700

District of Columbia Court of Appeals
Historic Courthouse
430 E Street, NW
Washington, DC 20001
T: (202) 879-2700

4.    A. L. Emch (WV State Bar #1125) will be the responsible local attorney in this

matter and his consent to do so is in his verified endorsement of this application. Mr. Emch is an

active member in good standing with the West Virginia State Bar. Mr. Emch's contact information

is as follows:

Jackson Kelly PLLC
500 Lee Street, Suite 1600
P.O. Box 553
Charleston, WV 25322-0553
T: (304) 340-1172
F: (304) 340-1050
alemch@jacksonkelly.com

5.      I have been involved in the following proceeding before West Virginia tribunals in the preceding 24 months.

None

6.      Members of my firm have not been involved in any proceedings before West Virginia tribunals in the preceding 24 months except as set forth in Exhibit A.

7.      I certify that I am a member in good standing and authorized to appear in the courts identified in Paragraph 3 above, and I certify that I have not been disciplined in any such jurisdiction.

8.      I consent to the jurisdiction of this Court and I agree to comply with all laws, rules and regulations of West Virginia state and local governments, where applicable, including taxing authorities and any standards for pro bono civil and criminal indigent defense services.

9.      A fee of Three Hundred Fifty and 00/100 Dollars ($350.00) has been paid to the West Virginia State Bar relating to this application. Furthermore, a copy of this application is being sent to the West Virginia State Bar.

Wherefore, David C. Lashway respectfully requests that the Court grant his Application

for Admission *Pro Hac Vice* in the referenced case.

Dated: March 21, 2019.

Respectfully submitted,

A.L. Emch (West Virginia Bar # 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322-0553
(304) 340-1000

4839-1215-3484.v1

## VERIFICATION

District of Columbia                         )
                                             )
                                             )

    I, David C. Lashway, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know that contents thereof; and that the contents are true of my own knowledge.

DC Bar No.: 458731

Subscribed and sworn to before me
this 21 day of March, 2019.

Notary Public, State of _Distriert of Columbia_
My Commission expires _October 14, 2021_



FILED

MAR 27 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

**IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA**

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

        Plaintiff,

v.                                 Civil Action No. 19-C-59-MW

NUANCE COMMUNICATIONS, INC.,

        Defendant.

## STATEMENT OF ENDORSEMENT

      Pursuant to Rule 8.0(c) of the Rule for Admission to the Practice of Law in the State of West Virginia, A. L. Emch, endorses the Verified Statement of Application for *Pro Hac Vice* Admission by David C. Lashway and agrees to participate in the referenced case as local counsel.

                          Respectfully submitted,

                          A. L. Emch (WVSB #1125)
                          JACKSON KELLY PLLC
                          500 Lee Street, Suite 1600
                          P.O. Box 553
                          Charleston, WV 25322-0553
                          T: (304) 340-1172
                          F: (304) 340-1050
                          aemch@jacksonkelly.com

                          *Counsel for Defendant,*
                          *Nuance Communications, Inc.*

4848-1651-0094.v1

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, TO WIT:

    I, A. L. Emch, upon first being sworn and upon oath, state that I have appeared as counsel of record for Nuance Communications, Inc. in the case styled *Princeton Community Hospital, Inc. v. Nuance Communications, Inc.*, Civil Action No. 19-C-59, and that the matters set forth in this Verified Statement of Application for Admission *Pro Hac Vice* of David C. Lashway are true and accurate to the best of my knowledge and belief; and that I agree to participate as the local counsel of record as provided for by the Rules of this Honorable Court.

                                              A. L. Emch

Taken, subscribed to and sworn before me on this _25th_ day of March, 2019.

My commission expires: _Sept. 30, 2023_

Official Seal
Notary Public, State of West Virginia
Barbara A Bowling
16 Hillsdale Circle
Scott Depot, WV 25560
My Commission Expires September 30, 2023

                                            Notary Public

FILED

MAR 2 7 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

      **Plaintiff,**

v.

                                      **Civil Action No. 19-c-59-MW**

NUANCE COMMUNICATIONS, INC.,

      **Defendant.**

## CERTIFICATE OF SERVICE

I, A. L. Emch, counsel for Nuance Communications, Inc., certify that on this 25th day of March, 2019, the **Motion for *Pro Hac Vice* Admission of David C. Lashway** was filed and served via U.S. Mail to the following:

                    Larry J. Rector, Esquire
                    STEPTOE & JOHNSON PLLC
                    400 White Oaks Boulevard
                    Bridgeport, WV  26330

                    A. L. Emch (West Virginia Bar # 1125)

4825-5486-2734.v1

**IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA**

FILED

MAR 27 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

      **Plaintiff,**

v.

                                    **Civil Action No. 19-C-59-MW**

NUANCE COMMUNICATIONS, INC.,

      **Defendant.**

## MOTION FOR *PRO HAC VICE* ADMISSION OF JOHN W. WOODS

Pursuant to Rule 8.0 of the Rules of Admission to the Practice of Law in the State of West Virginia, John W. Woods of the law firm of Baker & McKenzie LLP, as applicant, and A. L. Emch of the law firm of Jackson Kelly PLLC, as an attorney in good standing in West Virginia and local counsel under the aforesaid rule, respectfully move this Court to grant John W. Woods, not being lawfully licensed and admitted to the practice of law in the State of West Virginia, the privilege to appear in this Court in the above-captioned civil action as an attorney on behalf of Defendant Nuance Communications, Inc.

In support of this Motion, the Verified Statement of Application for *Pro Hac Vice* Admission by John W. Woods with the attached Statement of Endorsement are submitted as Exhibit 1.

4840-4203-5598.v1

Respectfully submitted,

NUANCE COMMUNICATIONS, INC.,

A. L. Emch (WVSB# 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322-0553
Phone: (304) 340-1172
*Counsel for Nuance Communications, Inc.*

4840-4203-5598.v1

FILED

MAR 27 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

## IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION, INC.

      Plaintiff,

v.

                                     Civil Action No. 19-c-59-MW

NUANCE COMMUNICATIONS, INC.

      Defendant.

## APPLICATION FOR ADMISSION *PRO HAC VICE* OF JOHN W. WOODS, JR.

Comes Now John W. Woods of the law firm of Baker & McKenzie LLP, and files this application pursuant to Rule 8.0 of the West Virginia Rules for Admission to the Practice of Law, to be admitted *pro hac vice* for the case styled *Princeton Community Hospital Association, Inc. v. Nuance Communications, Inc.* and respectfully states as follows:

      1.     I seek permission to appear *pro hac vice* as counsel for Defendant Nuance Communications, Inc. in the above-captioned matter.

      2.     I am an attorney with Baker & McKenzie LLP, which is located at 815 Connecticut Avenue, Washington, DC 20006. I am a member in good standing with the Bar of the District of Columbia and my bar number is 461345, an inactive member of the State Bar of New Hampshire and my bar number is 11380, and a member in good standing with the Bar of the Commonwelath of Virginia and my bar number is 39885.

      3.     The name, address and telephone number of the registration agency of all courts in which I am admitted are as follows:

4839-1215-3484.v1

Supreme Court of Virginia
P.O. Box 1315
100 North Ninth Street, 5th Floor
Richmond, VA 23219-1315
T: (804) 786-2251

United States District Court Eastern District of Virginia
Spottswood W. Robinson III and Robert R. Merhige, Jr.
Federal Courthouse
701 East Broad Street
Richmond, VA 23219
T: (804) 916-2200

District of Columbia Court of Appeals
Historic Courthouse
430 E Street, NW
Washington, DC 20001
                         T: (202) 879-2700

New Hampshire Supreme Court [Inactive]
One Charles Doe Drive
Concord, NH 03301
T: (603) 271-2646

United States District Court
District of New Hampshire
55 Pleasant Street
Room 110
Concord, NH 03301
T: (603) 225-1423

4.    A. L. Emch (WV State Bar #1125) will be the responsible local attorney in this

matter and his consent to do so is in his verified endorsement of this application.  Mr. Emch is an

active member in good standing with the West Virginia State Bar.  Mr. Emch's contact information

is as follows:

Jackson Kelly PLLC
500 Lee Street, Suite 1600
P.O. Box 553
Charleston, WV 25322-0553
T: (304) 340-1172
F: (304) 340-1050
alemch@jacksonkelly.com

5.     I have been involved in the following proceeding before West Virginia tribunals in the preceding 24 months.

None

6.     Members of my firm have not been involved in any proceedings before West Virginia tribunals in the preceding 24 months except as set forth in Exhibit A.

7.     I certify that I am a member in good standing and authorized to appear in the courts identified in Paragraph 3 above, and I certify that I have not been disciplined in any such jurisdiction.

8.     I consent to the jurisdiction of this Court and I agree to comply with all laws, rules and regulations of West Virginia state and local governments, where applicable, including taxing authorities and any standards for pro bono civil and criminal indigent defense services.

9.     A fee of Three Hundred Fifty and 00/100 Dollars ($350.00) has been paid to the West Virginia State Bar relating to this application.  Furthermore, a copy of this application is being sent to the West Virginia State Bar.

4839-1215-3484.v1

Wherefore, John W. Woods respectfully requests that the Court grant his Application for

Admission *Pro Hac Vice* in the referenced case.

Dated: March 21, 2019.

Respectfully submitted,

A.L. Emch (West Virginia Bar # 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322-0553
(304) 340-1000

4839-1215-3484.v1

## **VERIFICATION**

District of Columbia                    )
                                        )
                                        )

    I, John W. Woods, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know that contents thereof; and that the contents are true of my own knowledge.

DC Bar No.: 461345

Subscribed and sworn to before me
this 21 day of March, 2019.

Notary Public, State of _____District of Columbia_____
My Commission expires _____October 14, 2021_____

4839-1215-3484.v1

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

FILED
MAR 27 2019
JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

       Plaintiff,

v.                              Civil Action No. 19-C-59-MW

NUANCE COMMUNICATIONS, INC.,

       Defendant.

## STATEMENT OF ENDORSEMENT

Pursuant to Rule 8.0(c) of the Rule for Admission to the Practice of Law in the State of West Virginia, A. L. Emch, endorses the Verified Statement of Application for *Pro Hac Vice* Admission by John W. Woods and agrees to participate in the referenced case as local counsel.

Respectfully submitted,

A.  L. Emch (WVSB #1125)
JACKSON KELLY PLLC
500 Lee Street, Suite 1600
P.O. Box 553
Charleston, WV 25322-0553
T: (304) 340-1172
F: (304) 340-1050
aemch@jacksonkelly.com

*Counsel for Defendant,*
*Nuance Communications, Inc.*

4824-9073-2942.v1

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, TO WIT:

    I, A. L. Emch, upon first being sworn and upon oath, state that I have appeared as counsel of record for Nuance Communications, Inc. in the case styled *Princeton Community Hospital, Inc. v. Nuance Communications, Inc.*, Civil Action No. 19-C-59, and that the matters set forth in this Verified Statement of Application for Admission *Pro Hac Vice* of John W. Woods are true and accurate to the best of my knowledge and belief; and that I agree to participate as the local counsel of record as provided for by the Rules of this Honorable Court.

                                A. L. Emch

Taken, subscribed to and sworn before me on this _25th_ day of March, 2019.

My commission expires: _Sept. 30, 2023_

Official Seal
Notary Public, State of West Virginia
Barbara A Bowling
16 Hillsdale Circle
Scott Depot, WV 25560
My Commission Expires September 30, 2023

                                Notary Public

IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

       **Plaintiff,**

v.                                      Civil Action No. 19-c-59-MW

NUANCE COMMUNICATIONS, INC.,

       **Defendant.**

## CERTIFICATE OF SERVICE

    I, A. L. Emch, counsel for Nuance Communications, Inc., certify that on this 25th day of

March, 2019, the **Motion for *Pro Hac Vice* Admission of John W. Woods** was filed and served

via U.S. Mail to the following:

> Larry J. Rector, Esquire
> STEPTOE & JOHNSON LPLC
> 400 White Oaks Boulevard
> Bridgeport, WV   26330

                                    _____

                        A.  L. Emch (West Virginia Bar # 1125)

4840-4203-5598.v1

NOTED CIVIL DOCKET

MAR 2 6 2019

JULIE BALL
CLERK CIRCUIT
MERCER

**IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA**

**PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,**

> **Plaintiff,**

**v.**                                                               **Civil Action No. 19-C-59-MW**

**NUANCE COMMUNICATIONS, INC.,**

> **Defendant.**

### ORDER GRANTING MOTION FOR ADMISSION
### PRO HAC VICE OF JOHN W. WOODS

Pending is the "Motion for *Pro Hac Vice* Admission of John W. Woods," who is an attorney in good standing with the Bar of the District of Columbia. Mr. Woods seeks admission *pro hac vice* as co-counsel for Nuance Communications, Inc.

The Court finds that the attorney's Application for Admission *Pro Hac Vice* satisfies the requirements of Rule 8.0 of the West Virginia Rules for Admission to the Practice of Law and Rule 4.02 of the West Virginia Trial and Court Rules and that payment of the *pro hac vice* annual fee in the amount of $350.00 has been paid. The Court therefore ORDERS that John W. Woods be admitted *pro hac vice* to participate as co-counsel for Nuance Communications, Inc. in the case styled *Princeton Community Hospital Association v. Nuance Communications, Inc.,* Civil Action No. 19-C-59.

In compliance with the requirements under Rule 8.0(B), Admission *pro hac vice* of the West Virginia Rules for Admission to the Practice of Law, a copy of the Application for Admission *Pro Hac Vice* to the West Virginia State Bar was sent to the West Virginia State Bar.

4844-8623-8862.v1

The Clerk is directed to send copies of this Order to counsel of record upon entry with the Court.

Dated this 28th day of March, 2019.

JUDGE MARK WILLS

Presented By:

A. L. Emch  (West Virginia Bar # 1172)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322-0553
(304) 340-1172
*Counsel for Nuance Communications, Inc.*

4844-8623-8862.v1

NOTED CIVIL DOCKET

MAR 2 8 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

## IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA

**PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,**

       **Plaintiff,**

v.                               **Civil Action No. 19-C-59-MW**

**NUANCE COMMUNICATIONS, INC.,**

       **Defendant.**

### ORDER GRANTING MOTION FOR ADMISSION
### PRO HAC VICE OF JENNIFER B. SEALE

Pending is the "Motion for *Pro Hac Vice* Admission of Jennifer B. Seale," who is an attorney in good standing with the Bar of the District of Columbia. Ms. Seale seeks admission *pro hac vice* as co-counsel for Nuance Communications, Inc.

The Court finds that the attorney's Application for Admission *Pro Hac Vice* satisfies the requirements of Rule 8.0 of the West Virginia Rules for Admission to the Practice of Law and Rule 4.02 of the West Virginia Trial and Court Rules and that payment of the *pro hac vice* annual fee in the amount of $350.00 has been paid. The Court therefore ORDERS that Jennifer B. Seale be admitted *pro hac vice* to participate as co-counsel for Nuance Communications, Inc. in the case styled *Princeton Community Hospital Association v. Nuance Communications, Inc.,* Civil Action No. 19-C-59.

In compliance with the requirements under Rule 8.0(B), Admission *pro hac vice* of the West Virginia Rules for Admission to the Practice of Law, a copy of the Application for Admission *Pro Hac Vice* to the West Virginia State Bar was sent to the West Virginia State Bar.

The Clerk is directed to send copies of this Order to counsel of record upon entry with the Court.

Dated this _28th_ day of _March_, 2019.

_[signature]_

JUDGE MARK WILLS

Presented By:

_[signature]_

A. L. Emch (West Virginia Bar # 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322-0553
(304) 340-1172
*Counsel for Nuance Communications, Inc.*

4823-6579-1886.v1



NOTED CIVIL DOCKET

MAR 2 8 2019

JULIE BALL
CLERK CIRCUIT COURT
MERCER COUNTY

**IN THE CIRCUIT COURT OF MERCER COUNTY, WEST VIRGINIA**

PRINCETON COMMUNITY HOSPITAL
ASSOCIATION,

      **Plaintiff,**

v.                                 **Civil Action No. 19-C-59-MW**

NUANCE COMMUNICATIONS, INC.,

      **Defendant.**

## ORDER GRANTING MOTION FOR ADMISSION
### PRO HAC VICE OF DAVID C. LASHWAY

Pending is the "Motion for *Pro Hac Vice* Admission of David C. Lashway," who is an attorney in good standing with the Bar of the District of Columbia. Mr. Lashway seeks admission *pro hac vice* as co-counsel for Nuance Communications, Inc.

The Court finds that the attorney's Application for Admission *Pro Hac Vice* satisfies the requirements of Rule 8.0 of the West Virginia Rules for Admission to the Practice of Law and Rule 4.02 of the West Virginia Trial and Court Rules and that payment of the *pro hac vice* annual fee in the amount of $350.00 has been paid. The Court therefore ORDERS that David C. Lashway be admitted *pro hac vice* to participate as co-counsel for Nuance Communications, Inc. in the case styled *Princeton Community Hospital Association v. Nuance Communications, Inc.,* Civil Action No. 19-C-59.

In compliance with the requirements under Rule 8.0(B), Admission *pro hac vice* of the West Virginia Rules for Admission to the Practice of Law, a copy of the Application for Admission *Pro Hac Vice* to the West Virginia State Bar was sent to the West Virginia State Bar.

4841-1979-6878.v1

The Clerk is directed to send copies of this Order to counsel of record upon entry with the

Court.

Dated this 29th day of March, 2019.

JUDGE MARK WILLS

Presented By:

A. L. Emch  (West Virginia Bar # 1125)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322-0553
(304) 340-1172
*Counsel for Nuance Communications, Inc.*